UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLENN A. PRATT, | : |
| | : |
| Plaintiff, | : **COMPLAINT** |
| | : |
| v. | : |
| | : |
| ATALIAN GLOBAL SERVICES INC., ATALIAN | : |
| US NEW ENGLAND, LLC, and LA FINANCIERE | : |
| ATALIAN S.A.S., | : CIVIL ACTION NO. |
| | : |
| Defendants. | : |
| | : |

Plaintiff Glenn A. Pratt, by and through his counsel, Duane Morris LLP, brings this

action for breach of contract and declaratory relief against Defendants, alleging as follows:

### Introduction

1.      This action is for breach of a Stock Purchase Agreement (the "SPA") and a

related Escrow Agreement (together, the "Agreements") Mr. Pratt entered into in connection

with the sale of his facilities management business (the "Business") to Defendants in December

2017.  Mr. Pratt entered into the agreements with AGS-Suburban LLC, which subsequently was

merged into Defendant Atalian US New England, LLC (together with AGS-Suburban, unless

otherwise indicated, "Atalian").  Atalian's parent entities, Defendants La Financiere Atalian

S.A.S. and Atalian Global Services, Inc. entered into the SPA for certain limited purposes,

including to serve as guarantors of Atalian's obligations under the SPA.

2.      The Business primarily performs cleaning and janitorial services in New England,

New York, Ohio, and Pennsylvania.

3.      The Agreements provided that a portion of the purchase price amounting to $2.1 million would be set aside in escrow to provide for indemnification in the event that Atalian suffered an indemnifiable loss.

4.      To obtain indemnification from the escrow in the event of an indemnifiable loss, Atalian was required to provide proper notice (an "Indemnification Notice") of the loss to Mr. Pratt within two years of December 7, 2017 (i.e., by December 7, 2019, the "Applicable Limitation Date"), the effective date of the SPA.

5.      For nearly two years, Mr. Pratt heard nothing from Atalian about any claims or losses.

6.      But on December 4, 2019, just three days before expiration of the Applicable Limitation Date, Atalian sent a letter to Mr. Pratt that purported to be an Indemnification Notice (the "December 4th Letter").  The December 4th Letter asserted losses resulting from purported breaches of certain of the representations and warranties in the SPA.  The December 4th Letter provided minimal detail regarding how the limited facts presented demonstrated that Mr. Pratt breached the cited representations and warranties in the SPA which Atalian claimed gave rise to the Claims asserted. The December 4th Letter baldly claimed that Atalian "has incurred investigative costs (including legal fees) and losses related to the Claims in excess of the amount held under the Escrow Agreement; that is, over $2.1 Million."  The December 4th Letter provided no detail or quantification regarding any of the purported investigative costs or losses associated with the three separate claims asserted in the December 4th Letter, and instead after each claim repeated that its damages were "over $2.1 Million" and that that figure was a  "non-binding preliminary estimate."  Atalian sent a separate letter to the Escrow Agent on the same day informing the Escrow agent of the December 4th Letter and requesting that the Escrow

DM1\11100209.8

Agent not distribute any portion of the Escrow Amount to Mr. Pratt unless it receives a Joint Instruction Letter or a Final Order.

7.     The December 4th Letter did not comply with Atalian's notice obligations under the SPA.  It did not adequately describe the purported breaches or losses, simply claiming Atalian "has incurred" over $2.1 Million as of December 4, 2019.

8.     Aside from the plain insufficiency of the purported Indemnification Notice, the purported breaches it identifies are factually and legally baseless.

9.     The transparent purpose of the December 4th Letter was to tie up the Escrow Amount in an effort to prevent Mr. Pratt from realizing the full amount of the sale.  Atalian has now forced Mr. Pratt to bring this lawsuit to recover the money that he is rightfully owed. Mr. Pratt seeks money damages, including his attorney's fees under Section 9.6 of the SPA, and a Final Order or other Order from this Court requiring that Atalian sign and deliver a Joint Instruction Letter to the Escrow Agent to disburse the Escrow Amount to Mr. Pratt, which Atalian has wrongfully failed and refused to do.

*Parties*

10.     Plaintiff Glenn A. Pratt is an individual residing in Cohasset, Massachusetts.

11.     Defendant Atalian Global Services, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business in New York.

12.     Defendant Atalian US New England, LLC is a limited liability company formed under the laws of the State of Delaware with a principal place of business in New Jersey.  The sole member of Atalian US New England, LLC is Defendant Atalian Global Services, Inc. Atalian US New England, LLC, is the successor company to AGS-Suburban LLC, the entity that

3

signed the SPA.  On January 1, 2020, AGS-Suburban LLC merged into Atalian US New

England, LLC, which was the surviving entity.

13.     Defendant La Financiere Atalian S.A.S. is a joint stock company formed under

the laws of France with its principal place of business in France.  Its owners, Atalian Holding

Development and Strategy SA and Franck Julien, are foreign residents.

### Jurisdiction and Venue

14.     The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C.

§ 1332(a) based on diversity of citizenship of the parties and because the amount in controversy,

exclusive of interest and costs, is in excess of $75,000.

15.     The Court has personal jurisdiction over Atalian Global Services, Inc. because it

maintains a principal place of business in New York and, independently, because it consented to

jurisdiction in this Court in Sections 9.1(d) and 10.10 of the SPA.

16.     The Court has personal jurisdiction over Atalian US New England LLC because it

merged with AGS-Suburban, LLC, which consented to jurisdiction in this Court pursuant to

Section 10.10 of the SPA and Article 6 of the Escrow Agreement.

17.     The Court has personal jurisdiction over La Financiere Atalian S.A.S. because it

consented to jurisdiction in this Court in Sections 9.1(d) and 10.10 of the SPA.

18.     Venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to

personal jurisdiction in this District and because the parties consented to venue in this District in

Sections 9.1(d) and 10.10 of the SPA.

### Facts

19.     Mr. Pratt was the owner beneficially and of record of 100% of the outstanding

stock of six companies that provided building, mechanical, janitorial cleaning, clean-room, and

4

industrial services in New England, New York, Ohio, and Pennsylvania.  The six companies were Suburban Contract Cleaning, Inc., a Massachusetts corporation d/b/a Suburban Integrated Facilities Resources, Suburban Building Services Group, Inc., a Massachusetts corporation, Omni Building Services - Ohio Inc., an Ohio corporation; Suburban Contract Cleaning Services of Pennsylvania, Inc., a Pennsylvania corporation, Braintree Building Services of Rhode Island, Inc., a Rhode Island corporation, and Suburban Mechanical Services, Inc., a Massachusetts corporation (collectively "Suburban").

20.     Mr. Pratt founded Suburban in 1991 in Braintree, Massachusetts.  Suburban focused on providing services in the suburbs, first in the Greater Boston Area, and then expanding to other New England states, New York, Ohio, and Pennsylvania.

21.     Atalian Global Services, Inc. is the United States division of its France-based parent company, La Financiere Atalian, S.A.S.  As of June 2017, La Financiere Atalian, S.A.S. had revenues of $2 billion and operated in 30 countries across four continents.  Over the last few years, Atalian has expanded its footprint in the United States by purchasing facilities management companies with a strong track record of success in their local markets.

22.     Atalian approached Mr. Pratt with an interest in purchasing Suburban in order to gain access to the valuable contracts and markets that Suburban held in New England, New York, Ohio, and Pennsylvania.

23.     Atalian conducted extensive due diligence on Suburban over the course of several months.  As part of the due diligence process, Mr. Pratt provided Atalian with all of Suburban's financial records, contracts, and other company documents requested by Atalian.

24.     After Atalian completed its due diligence, it proceeded to close on the purchase of Mr. Pratt's stock in Suburban.

25.     Effective December 7, 2017 (the "Closing Date"), the parties signed the SPA and closed the sale.

26.     As a condition of the sale, $2.1 million, ten percent of the purchase price, went into escrow.  U.S. Bank National Association is the Escrow Agent.  Pursuant to the Escrow Agreement, signed concurrently with the SPA and made part of the SPA through the term "Transaction Documents," the Escrow Agent may only disburse the Escrow Funds if it receives a Joint Instruction Letter or a Final Order.

27.     In Section 9.1 of the SPA, Atalian Global Services Inc. and La Financiere Atalian S.A.S. guaranteed that Atalian would perform all of its payment and performance obligations under the SPA.

28.     After closing, the remedy for either party for a breach of the SPA are the indemnification rights provided under the SPA.

29.     Atalian is only entitled to any of the Escrow Amount if it establishes that Mr. Pratt is in breach of the representation and warranties identified in the December 4th Letter and its indemnifiable damages exceed the Deductible, which "equals or exceeds an amount equal to US$210,000 in the aggregate."

30.     To claim indemnification, Atalian had to send an Indemnification Notice "as promptly as reasonably possible . . . to the other Party . . . after . . . discovering the liability, obligation, or facts giving rise to such claim for indemnification, describing the claim, the amount thereof (if known and quantifiable), and the basis thereof" on or before the Applicable Limitation Date of December 7, 2019.

31.     Just three days before the Applicable Limitation Date for the relevant indemnity claims, Atalian sent the December 4th Letter, which purported to be an Indemnification Notice

pursuant to the SPA.  Atalian alleged that Mr. Pratt breached the warranties and representations in Sections 5.1, 5.4, 5.5, 5.12, 5.15, 5.19, and 5.21 of the SPA.

32.     Atalian also sent a letter to the Escrow Agent informing it of the December 4th Letter and the alleged indemnity claims.

33.     In fact, Mr. Pratt was not in breach of the representations and warranties cited in the December 4th Letter and Atalian has not suffered an indemnifiable loss.

34.     Atalian breached its contracts with Mr. Pratt by failing and refusing, on the basis of an improper Indemnification Notice and baseless claims for indemnification, to send a Joint Instruction to disburse the Escrow Amount to Mr. Pratt.

35.     The December 4th Letter fails to comply with Atalian's notice obligations under the SPA.

36.     Atalian did not provide Mr. Pratt prompt notice of the allegations upon their discovery as required by the SPA.

37.     The December 4th Letter fails to adequately describe the claims or quantify the purportedly indemnifiable losses Atalian claims to have incurred as of December 4, 2019. The December 4th Letter is impermissibly and intentionally vague.

38.     Atalian fails to explain how the limited facts presented demonstrated that Mr. Pratt breached the cited representations and warranties in the SPA.

39.     Atalian's reliance on a non-binding, lump-sum estimate that exceeds the Escrow Amount is improper under the SPA.

40.     Atalian has not met its burden to establish that it is entitled to indemnity for any claim alleged in the December 4th Letter or that it has suffered any indemnifiable loss.

DM1\11100209.8

41.     For example, in the December 4th Letter, one of the three claims Atalian alleges is that Mr. Pratt "failed to disclose to Purchaser that Suburban was operating, controlling and de facto owned an affiliated company known as Taj Contract Cleaning, Inc. in violation of Section 5.19 , Affiliate Transactions, of the SPA."

42.     Atalian's assertion has no basis in fact or law.  Suburban did not operate, control, or "de facto own[]" Taj, and Taj was not an Affiliate of Suburban as defined in the SPA.

43.     Section 5.19 warrants that Mr. Pratt disclosed all contracts "pertaining to the business of" Suburban for "any Affiliate of any officer, director, manager, or equityholder of [Suburban]."

44.     Atalian asserts that Mr. Pratt failed to disclose that Taj is owned by Dan Persaud, whose brother, Roger Persaud, worked for Suburban.

45.     However, no such disclosure was required, as Roger Persaud was not an "officer, director, manager, or equity holder" of Suburban.

46.     Atalian continued to subcontract business to Taj after the closing, in the same way that Suburban had done before the closing. In fact, Atalian expanded its relationship with Taj to include business with the State of Rhode Island, which relied, in part, on Taj being a qualified minority owned business. Indeed, Atalian continued to do business with Taj after Roger Persaud was terminated by Atalian on November 4, 2019 and after Atalian sent the December 4th Letter to Mr.  Pratt.

47.     On March 16, 2020, Atalian sued Taj and Roger Persaud and two others in Federal Court in Rhode Island (the Rhode Island Suit") seeking damages on several theories for the period after December 7, 2017. The Rhode Island Suit claims Taj made payments to Roger Persaud and two others and that they perpetrated a "ghost employee" scheme against Atalian.

DM1\11100209.8

Atalian asserts it first learned of their scheme on July 16, 2019. It details payments allegedly made to "ghost employees" from June 2019 to August 2019, and claims the total paid was in excess of $300,000.  The defendants in the Rhode Island Suit have denied the "ghost employee" allegations in their answers.  Although the December 4 Letter vaguely claims this conduct somehow gives rise to a claim and indemnifiable loss against Mr. Pratt for "over $2.1 Million," the Rhode Island Suit does not mention, or make any claims, against Mr. Pratt.

48.     Mr. Pratt has been prejudiced by Atalian's delay and failure to comply with its notice obligations under the SPA as detailed above, in that, among other things, he has been forced to expend substantial amounts of time and money attempting to understand the basis for Atalian's improper interference with the release of the Escrow Amounts and bringing this action to enforce his rights.

49.     By letter dated, March 4, 2020, Mr. Pratt, through counsel, among other things, denied Atalian's claim of breach of his representations and warranties and requested that Atalian release the Escrow Amount to Mr. Pratt.  The letter also requested copies of the books and records that supported Atalian's purported claims and damages.

50.     Section 8.2(g)(v) of the SPA, states "Each Party shall, and shall cause each affiliated Indemnified Party to, make available to the Indemnifying Party and its representatives all books and records of the Indemnified Party reasonably relating to any Loss and shall render to the Indemnifying Party such assistance and access to records and the representatives of such Indemnified Party as the Indemnifying Party and its representatives may reasonably request."

51.     By letter dated March 13, 2020, Atalian, among other things, again failed and refused to send a Joint Instruction Letter which would allow the Escrow Agent to disburse the Escrow Amount to Mr. Pratt.  It did not provide any documentary support for its claims.  Instead,

Atalian insisted that it needed a confidentiality agreement before it would provide any books and records.  Atalian made this demand even though three days later, on March 16, 2020, without notice or disclosure to Mr. Pratt, Atalian went ahead and publicly filed a complaint (in federal court in Rhode Island as described herein) that revealed much of the purportedly confidential information (and further confirmed the baselessness of the December 4th letter).

52.     On March 25, 2020 Mr. Pratt again wrote to Atalian to request all books and records reasonably relating to the claims alleged in the December 4th Letter.

53.     On April 1, 2020, Atalian provided Mr. Pratt with a proposed confidentiality agreement.

54.     The proposed confidentiality agreement was overly restrictive and unacceptable to Mr. Pratt.  On April 9, 2020, Mr. Pratt sent a revised, reasonable draft of the confidentiality agreement to Atalian and requested that Atalian provide any non-confidential documents.

55.     On April 22, 2020, in response to Mr. Pratt's request, Atalian provided two documents that are publicly available, and stated "we cannot review every document you request in detail, and it would be unreasonable to expect us to do so."  It did not provide the complaint from the Rhode Island Suit.

**COUNT I – BREACH OF THE SPA AS AGAINST ATALIAN**

56.     Mr. Pratt repeats and realleges the allegations set forth in the above paragraphs as though fully set forth herein.

57.     Mr. Pratt and Atalian entered into an enforceable contract, the SPA, on December 7, 2017.

DM1\11100209.8

58.     Atalian breached the SPA by wrongfully claiming that Mr. Pratt breached the warranties and representation set out in Sections 5.1, 5.4, 5.5, 5.12, 5.15, 5.19, and 5.21 of the SPA.

59.     In fact, Mr. Pratt was not in breach of the representations and warranties cited in the December 4th Letter, and Atalian has not suffered an indemnifiable loss.

60.     Atalian also breached the SPA by failing to comply with the procedures regarding indemnification and release of the escrow set forth in Article 8 of the SPA.

61.     Atalian breached the SPA by failing to provide notice of the alleged indemnification claims "as promptly as reasonably possible."

62.     These breaches prejudiced Mr. Pratt.

63.     Atalian breached the SPA by sending a letter to the Escrow Agent requesting that it not disburse funds to Mr. Pratt and by failing to agree to send a Joint Instruction Letter.

64.     Atalian breached the SPA by failing to pay Mr. Pratt the full Purchase Price in exchange for the sale of Suburban.

65.     As a result of Atalian's breaches, Mr. Pratt has incurred losses including, among other things, deprivation of the $2.1 million held in escrow and the attorneys' fees he has paid, and will continue to pay, to enforce his contractual rights.

**COUNT II – BREACH OF THE ESCROW AGREEMENT AS AGAINST ATALIAN**

66.     Mr. Pratt repeats and realleges the allegations set forth in the above paragraphs as though fully set forth herein.

67.     Mr. Pratt and Atalian entered into an enforceable contract, the Escrow Agreement, on December 7, 2017.

DM1\11100209.8

68.     Atalian breached the Escrow Agreement by refusing to send a Joint Instruction Letter to the Escrow Agent.

69.     Atalian breached the Escrow Agreement by improperly asserting baseless claims for indemnification against Mr. Pratt with the purpose and effect of preventing the disbursement of the Escrow Amount.

70.     As a result of Atalian's breaches, Mr. Pratt has incurred losses including, among other things, deprivation of the $2.1 million held in escrow and the attorneys' fees he has paid, and will continue to pay, to enforce his contractual rights.

## COUNT III – BREACH OF THE SPA AS AGAINST LA FINANCIERE ATALIAN S.A.S. AND ATALIAN GLOBAL SERVICES, INC.

71.     Mr. Pratt repeats and realleges the allegations set forth in the above paragraphs as though fully set forth herein.

72.     La Financiere Atalian S.A.S. and Atalian Global Services, Inc. (the "Guarantors") are parties to the SPA through Section 9.1.

73.     Section 9.1(a) provides that the Guarantors "irrevocably, absolutely and unconditionally guarantee[] to the Seller the due, prompt and punctual payment and performance by the Purchaser of all of its respective payment and performance obligations under this Agreement, including any damages payable to the Seller pursuant to the terms of this Agreement (the 'Atalian Guaranty')."

74.     Section 9.1(b) provides that the liability of the Guarantors "under the Atalian Guaranty shall be joint and several, and shall to the fullest extent permitted under Applicable Law, be absolute and unconditional irrespective of any amendment or modification of this Agreement, or change in the manner, place or terms of payment or performance, or any change or extension of the time of payment or performance of, renewal or alteration of, any obligation of

the Purchaser guaranteed by [Guarantors], any escrow arrangement or other security therefor, any liability incurred directly or indirectly in respect thereof, or any amendment or waiver of or any consent to any departure from the terms of this Agreement or the documents entered into in connection herewith."

75.     The Guarantors breached Sections 9.1(a) and (b) by failing to prevent the breaches by Atalian discussed above.

76.     As a result of the Guarantors' breaches, Mr. Pratt has incurred losses including, among other things, deprivation of the $2.1 million held in escrow and the attorneys' fees he has paid, and will continue to pay, to enforce his contractual rights.

## COUNT IV – DECLARATORY RELIEF UNDER 28 U.S.C. § 2201 *et seq.* AS AGAINST ATALIAN

77.     Mr. Pratt repeats and realleges the allegations set forth in the above paragraphs as though fully set forth herein.

78.     The Agreements provide that, within ten business days after December 7, 2019, the second anniversary of the closing of the transaction, Atalian, absent a valid claim for indemnification and sufficient notice thereof, must execute and send to the Escrow Agent a Joint Instruction Letter with Mr. Pratt directing the Escrow Agent to release the funds in the escrow account to Mr. Pratt.

79.     Notwithstanding the plainly insufficient purported Indemnification Notice Atalian sent on December 4, 2019, and the absence of any valid claim for indemnification, Atalian has refused to execute and deliver the Joint Instruction Letter.

80.     Atalian's reliance on a baseless indemnification claim and insufficient Indemnification Notice to tie up the Escrow Amount is a matter of current controversy.

DM1\11100209.8

81.     Mr. Pratt thus is entitled to a declaration that, under the Agreements, Atalian is required to execute and deliver a Joint Instruction Letter to the Escrow Agent directing it to release the Escrow Amount to Mr. Pratt.

## REQUEST FOR RELIEF

Mr. Pratt respectfully requests that this Court

     a.  Order Atalian to send a Joint Instruction Letter to the Escrow Agent authorizing the release of the full amount of the Escrow Amount to Mr. Pratt;

     b.  Issue a Final Order that can be delivered to the Escrow Agent ordering the release of the full amount of the Escrow Amount to Mr. Pratt;

     c.  Issue a judgment declaring that, under the Agreements, Atalian is required to send a Joint Instruction Letter to the Escrow Agent authorizing the release of the Escrow Amount to Mr. Pratt;

     d.  Award Mr. Pratt his actual damages;

     e.  Award Mr. Pratt his reasonable attorney's fees and costs;

     f.  Award Mr. Pratt such other relief as the Court may deem appropriate.


Dated: May 13, 2020                  GLENN A. PRATT
                                     By his attorneys,


                                     */s/ Michael A. Cabin*
                                     Michael A. Cabin
                                     Duane Morris LLP
                                     230 Park Avenue, Suite 1130
                                     New York, NY 10169-0079
                                     Tel: 212-404-8743
                                     Fax: 212-818-9606
                                     Email: macabin@duanemorris.com

                                     Of Counsel

DM1\11100209.8

Michael R. Gottfried (*pro hac vice* pending)
Bryan Harrison (*pro hac vice* pending)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-488-4201
mrgottfried@duanemorris.com
bharrison@duanemorris.com

*Attorneys for Plaintiffs*

DM1\11100209.8