UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

GLENN A. PRATT,

                Plaintiff and Counterclaim-Defendant,

         -v-

ATALIAN GLOBAL SERVICES INC.,
and ATALIAN US NEW ENGLAND, LLC,

                Defendants and Counterclaim-Plaintiffs.

20 Civ. 3710 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has reviewed letters from the parties concerning recent discovery disputes between Glenn A. Pratt ("Pratt") and Atalian Global Services Inc. and Atalian US New England, LLC (together, "Atalian"). *See* Dkts. 62 ("Atalian Ltr."), 63 ("Pratt Resp."), 67 ("Pratt Ltr."), 68 ("Atalian Resp."). The Court resolves those disputes as follows.

The Court first addresses the issues raised in Atalian's letter motion, which relate to the following issues: (1) its claim that Pratt has failed to adequately identify or search document repositories that might contain relevant information; (2) Pratt's assertion of privilege over documents without producing a privilege log; (3) the sufficiency of Pratt's responses to Atalian's requests for production; and (4) the sufficiency of Pratt's responses to Atalian's interrogatories.

1.     First, Atalian argues that it "has valid reason to believe" that Pratt has not adequately searched for or is withholding, documents for production. Atalian Ltr. at 2–3. In support, it cites Pratt's counsel's statement that they had relied on Pratt's judgments about privilege without reviewing an email account he claimed to be largely privileged, and did not give a

"straight answer" when asked if they had reviewed the contents of a separate hard drive. *Id.* at 2. Atalian thus seeks an order requiring (1) Pratt to affirm that he has performed a diligent search of all records in his possession and that he has not located anything beyond what he has already disclosed to Atalian; and (2) Pratt's counsel to confirm that they have reviewed all potential document repositories. *See id.* at 3. Pratt responds that he cannot currently access the email account at issue, but is working to do so and that counsel will review it when possible. *See* Pratt Resp. at 1–2. He also states that his counsel possesses and has reviewed the hard drive at issue. *See id.* Last, he represents that his counsel has reviewed emails they received *from* the inaccessible account, and has produced responsive, non-privileged material to Atalian. *Id.* at 2.

It appears that, as to this dispute, Pratt's counsel have fulfilled, or are in the process of fulfilling, their obligations to undertake the requested review and produce the requested information. To be sure, however, the Court directs Pratt and his counsel urgently to complete any outstanding review and production of documents, and for counsel to file a declaration affirming that *counsel* have diligently searched for and reviewed all relevant records and document repositories in Pratt's possession or control, and that all relevant, non-privileged material has been produced. For avoidance of doubt, the Court expects *counsel* to personally review materials for responsiveness and privilege. These determinations should not be left to the client. To the extent Atalian remains dissatisfied with such efforts, the parties are strongly encouraged to confer and resolve similar issues without the Court's involvement. Given the impending close of fact discovery, the Court expects and directs that the outstanding process of document review and production be complete by the close of business on Friday, April 9, 2021.

2. Next, Atalian challenges what it characterizes as Pratt's overbroad assertion of attorney-client privilege over many documents without producing a privilege log or otherwise

explaining the basis for his assertions of privilege. *See* Atalian Ltr. at 2–3. As a remedy, it seeks an order requiring Pratt to "either withdraw his privilege-based objections or provide a" privilege log. *Id.* at 3–4. Pratt responds that his counsel, who had been focused on an apparently failed mediation until recently, have turned their attention to discovery and intended to produce a privilege log by March 19, 2021. *See* Pratt Resp. at 2.

In light of Pratt's representation, with which the Court expects he has abided, this issue appears to be moot. Again, however, to be sure, the Court reminds Pratt that production of a privilege log "is in no way optional," and that "[f]ailing to timely provide a privilege log may also result in waiver." *JDS Therapeutics, LCC v. CVS Pharmacy, Inc.*, No. 15 Civ. 4365 (JSR), 2015 WL 6459092, at *2 (S.D.N.Y. Oct. 22, 2015) (quoting *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 66 (E.D.N.Y. 2007)); *Pem-Am., Inc. v. Sunham Home Fashions, LLC*, No. 03 Civ. 1377 (JFK) (RLE), 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007) (collecting cases holding that failure to produce a timely and specific privilege log can result in waiver, but finding that defendant's "tardiness in providing a privilege log" did not warrant such severe sanctions). To the extent that Pratt has not yet submitted to Atalian a fully compliant privilege log, it, too, is due by Friday, April 9, 2021.

3. Third, Atalian vaguely seeks an order requiring Pratt "to provide full, complete, and substantive responses to Atalian's" requests for production. Atalian Ltr. at 3. Of course, Pratt must timely comply with all of his discovery obligations under Rule 26. But the Court is unable to glean from Atalian's broad request any specific alleged inadequacy or challenge to Pratt's document productions. If Atalian has specific objections to discrete aspects of Pratt's responses, it should first address those complaints to Pratt and attempt to negotiate a resolution before seeking judicial intervention.

4. Last, Atalian challenges the adequacy of Pratt's responses to several of its interrogatories, and seeks the Court's determination of whether Pratt's objections thereto are appropriate. *See* Atalian Ltr. at 3. Pratt stands by his initial objections to each interrogatory at issue. *See* Pratt Resp. at 2–3. Pratt's objections fall into two broad categories: First, he has objected to many of Atalian's second interrogatories on the basis that they are contention interrogatories that were served untimely under Local Rule 33.3(c). Second, he objects to four other non-contention interrogatories as impermissible under Local Rule 33.3(a).

As to Pratt's objections to Atalian's contention interrogatories, the Court holds with Pratt. Generally, "Local Rule 33.3 anticipates that [contention] interrogatories should generally not be served during the early stages of discovery and, indeed, courts have discretion to order that such interrogatories not be answered until other discovery is substantially completed." *Trib. Co. v. Purcigliotti*, No. 93 Civ. 7222 (LAP) (THK), 1997 WL 540810, at *1 (S.D.N.Y. Sept. 3, 1997) (collecting cases); *see Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 110 (S.D.N.Y. 2013) ("[C]ontention interrogatories help the parties focus their arguments after discovery is complete and trial is near[.]"); *Erchonia Corp. v. Bissoon*, No. 07 Civ. 8696 (DLC), 2011 WL 3904600, at *8 (S.D.N.Y. Aug. 26, 2011) (In this District, contention interrogatories . . . are 'designed to assist parties in narrowing and clarifying the disputed issues' in advance of summary judgment practice or trial" (citation omitted)), *aff'd*, 458 F. App'x 58 (2d Cir. 2012) (summary order); *see also see* Local Rule 33.3(c) ("At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the Court has ordered otherwise."). Atalian contends that, this general rule notwithstanding, the parties' agreed-upon case management plan and scheduling order, which the Court has "so ordered," called for service of interrogatories far

4

before the close of discovery. Atalian Ltr. at 3 (citing Dkts. 46, 55, 60). But that order—which authorized the parties' to extend interim deadlines like the one for service of interrogatories without judicial intervention—does not displace Local Rule 33.3, under which "responses to contention interrogatories will be due at the *very end* of the fact discovery period." *Erchonia Corp.*, 2011 WL 3904600, at *8 (emphasis added). Here, where no depositions had yet taken place and document discovery was still in its early stages when Atalian served contention interrogatories on Pratt, Pratt was justified in refusing to respond.[1]

As to Pratt's objections to Atalian's other four interrogatories, the Court holds with Atalian on three and with Pratt on the fourth. Atalian challenges Pratt's responses to Interrogatory Nos. 2 and 4 in its first set of interrogatories, and Interrogatory Nos. 6 and 10 in its second set. *See* Atalian Ltr. at 3. Those are:

- Ex. B, No. 2: "Identify every individual or entity with whom You communicated in connection with the allegations in the 2019 Indemnification Notice, Your response to the 2019 Indemnification Notice, and/or the Complaint."

- Ex. B, No. 4: "Identify every written or oral agreement You entered into between July 1, 2013 and the present—either in Your individual capacity, or as an owner, director, or officer of one of the Companies You sold to Atalian—to which one or more of the individuals identified in your Initial Disclosures are or were a party."

---

[1] Atalian relies on *Volt Elec. NYC Corp. v. A.M.E., Inc.*, No. 20 Civ. 4185 (PAE), 2020 WL 6378945, at *2 (S.D.N.Y. Oct. 30, 2020), in which the Court required a party to supplement its response to a contention interrogatory that had been served on it before the end of fact discovery, in part because "the parties chose [an earlier date] as the final date for interrogatories to be served" in their case management plan. *Id.* But *Volt* is distinct. First, the issue there was not the timeliness of the party's contention interrogatories; the other side, had, in fact, responded by pointing to its document production. The issue was whether its document production had been adequate. Second, unlike here, where it appears that no depositions had occurred and document discovery was far from complete when Atalian served its contention interrogatories, the Court ordered the responding party to supplement its production two weeks from the end of depositions specifically because such production of documents would "enable the parties to litigate most efficiently." *Id.* Here, it would not have made practical litigation sense to require Pratt's early response to a bevy of contention interrogatories before the first deposition had taken place and document discovery was still underway. That said, with discovery closing in just over a month, service of and responses to such interrogatories may soon be more practical and, thus, timely.

- Ex. I, No. 6: "Describe in detail each effort You made to confirm the veracity and accuracy of the Seller's covenants, representations, and warranties set forth in the SPA and the corresponding Seller Disclosure Schedules."

- Ex. I, No. 10: "Identify every Suburban employee who, between January 1, 2017 and the Closing Date, had principal day-to-day supervisory responsibility with respect to a particular subject matter as that phrase is used in the SPA.  For each individual identified in Your response, please also describe the department or division in which the individual worked, his or her job title, and a description of his or her job responsibilities."

As to each, Pratt contends that these exceed the bounds of what is permitted by Local Rule 33.3, which restricts interrogatories served "[d]uring discovery" to "those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents," unless "they are a more practical method of obtaining the information sought than" other methods of discovery or "if ordered by the Court."  Local Rule 33.3(a), (b).

As to Interrogatories No. 2, 4, and 10, although they do fall outside the bounds of Local Rule 33.3(a), they are the most practical method of obtaining the information sought and so are permissible under Local Rule 33.3(b).  These requests seek lists of individuals and agreements, which may in some cases be quite lengthy and concern events that took place many years ago.  In such circumstances, it would be more practical for Pratt to provide the lists requested via interrogatory response "rather than have to commit them to memory and provide such a list through deposition testimony."  *Roelcke v. Zip Aviation, LLC*, No. 15 Civ. 6284 (JGK) (JLC), 2020 WL 5752228, at *2 (S.D.N.Y. Sept. 25, 2020); *see In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 5788680, at *3 (S.D.N.Y. Oct. 28, 2013) ("It would be inefficient to rely on witnesses at deposition to accurately recall a series of specific financial transactions made over five years ago.").  Thus, Pratt is directed to respond in full to each of these interrogatories.

As to Interrogatory No. 6, however, such response would involve potentially "long narrative explanations" that, in the Court's view, would be more practically discoverable through Pratt's or others' deposition testimony. *In re Weatherford*, 2013 WL 5788680, at *3 (quoting *E\*Trade Fin. Corp. v. Deutsche Bank, AG*, No. 05 Civ. 902 (RWS), 2006 WL 3267267, at *1 (S.D.N.Y. Nov. 13, 2006)). Accordingly, Interrogatory No. 6 does not fall within Local Rule 33.3(b)'s ambit and Pratt's objection to it is sustained.

The Court next turns to the issues Pratt raises in his letter motion, which concern (1) Atalian's relevancy objections to three categories of document requests and interrogatories: (a) due-diligence documents; (b) Atalian's operations after Pratt's sale of Suburban to Atalian; and (c) Atalian's damages methodology; and (2) broadly, the organization and quality of Atalian's responses to Pratt's document requests.

1.  First, Atalian objects to Pratt's request for documents related to Atalian's due-diligence process before it purchased Pratt's business ("Suburban") from him in 2017. Atalian argues that these records are irrelevant because the share purchase agreement ("SPA") by which Pratt sold Suburban to Atalian contained a provision that stated "[t]he representations and warranties contained in this Agreement . . . shall in no event be affected by any investigation, inquiry or examination made" through the parties' due-diligence efforts. *See* Atalian Resp. at 2; Dkt. 18-1 ("SPA") § 8.1. It also argues that it need not produce these records because Pratt should already have them in his possession. Atalian Resp. at 2. Pratt counters that these records are relevant at least to his defense against Atalian's fraud counterclaim, even if they cannot vary his obligations under the SPA itself, because Atalian alleges that it was duped into buying Suburban in part because Pratt fraudulently concealed Suburban's illicit reliance on lower-wage, non-union subcontractors during their negotiations. *See* Pratt Ltr. at 2.

The Court holds with Pratt. Even assuming that Atalian is correct that section 8.1 of the SPA forbids Pratt from relying on due-diligence materials in arguing that the representations and warranties in the SPA were true when made, Atalian has not shown that such limitation on Pratt's contractual defenses extends to its fraud counterclaim. Most pertinent, to prove that Pratt fraudulently induced Atalian to buy Suburban, Atalian will have to show that its reliance on Pratt's representations was justifiable. *See, e.g.*, *Hopkins v. Concorde Career Colls., Inc.*, No. 15 Civ. 206 (LPS), 2016 WL 1238775, at *2 (D. Del. Mar. 29, 2016). If, in fact, Atalian learned of Suburban's use of non-union subcontractors before purchasing Suburban, such reliance may be called into question. And "[Atalian's] assertion, that [it] is not required to produce documents that are presumably already in [Pratt's] possession, is incorrect as a matter of law." *Aboutaam v. El Assaad*, No. 18 Civ. 8995 (ALC) (KHP), 2019 WL 8325096, at *1 (S.D.N.Y. Aug. 28, 2019) (collecting cases); *see*, e.g.*, Burns v. Bank of Am.*, No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437, at *15 n.13 (S.D.N.Y. June 4, 2007) ("Even if [a party] already possesses many of the documents in question, this is not a bar to its taking discovery in this matter."); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 380 (S.D.N.Y. 2011) (same); *Bauman v. 2810026 Can. Ltd.*, No. 15 Civ. 374A(F), 2016 WL 402645, at *2 (W.D.N.Y. Feb. 3, 2016) (same). Thus, Atalian must respond to Pratt's requests for documents related to the parties' due-diligence process.

2. Next, Atalian objects to Pratt's request for records concerning Atalian's post-sale operations, including whether it continued to use non-union contractors after the sale without receiving a union grievance. It argues that such documents are irrelevant. Atalian Resp. at 2. Pratt proffers that such information is relevant to whether such subcontracting was permissible and whether Atalian suffered damages as a result of Pratt's alleged nondisclosure of such arrangements. Pratt Ltr. at 2. The Court again holds with Pratt. Although Atalian's continued

use of non-union subcontractors does not appear to bear on the permissibility of such practice under Suburban's collective-bargaining agreement, it appears clearly relevant to Atalian's asserted damages. Notably, in a separate portion of its response, Atalian represents that its damages arise, at least in part, from Pratt's nondisclosure of such non-union arrangements, which "artificially depressed Suburban's operational costs and inflated Suburban's reported earnings, thereby inducing Atalian to agree to purchase Suburban and to do so at a higher price than supported by Suburban's actual earnings." Atalian Resp. at 1. But if Atalian, in fact, continued to use such non-union subcontractors as it took the reins at Suburban, it, too, would have benefitted from "depressed" operational costs and "inflated" earnings, which would at least partially undermine its theory of damages. Atalian, therefore, must also produce documents responsive to this request.

3. Third, Pratt challenges one of Atalian's responses to his interrogatories, arguing that Atalian has "hid[den] the factual basis for its damage claim," instead "uniformly referenc[ing] documents Atalian is producing." Pratt Ltr. at 2. Atalian responds that this is not true, that it has been clear about its damages theory, and that, short of prematurely producing the report of its damages expert, it does not know how it can answer further. Atalian Resp. at 1–2. On this point, Atalian is correct. In the interrogatory response that Pratt attaches to his letter on this point, Atalian explains that its damages consist of "the artificially inflated Purchase Price, payments made to ghost employees, and the fees and costs Atalian has been forced to incur as a result of plaintiff's fraudulent failure to disclose information in breach of the SPA as well as plaintiff's subsequent refusal to cooperate with Atalian and its investigation." Pratt Ltr., Ex. 4 at 6; *see also, e.g.*, Dkt. 52 (counterclaims) ¶¶ 32–33 (misrepresentations about compliance with union agreement "induced Atalian to agree to pay more for the Companies than it otherwise

9

would have agreed to pay"). The factual predicate for Pratt's challenge to Atalian's response—that Atalian's answer "hide[s] the factual basis for its claim"—is therefore wrong. The Court does not perceive a need for further elaboration, through interrogatories, of the damages Atalian is pursuing at this point in the litigation. Pratt remains free to pursue additional information about Atalian's damages through other forms of discovery, including expert discovery, and Atalian will, of course bear the burden of proving its damages at trial.

4. Last, Pratt challenges the form in which Atalian has produced documents in this case, alleging that it has produced more than 170,000 pages of discovery "without any guidance or certainty as to what categories of documents Atalian intended to include or exclude and which documents respond to which requests." Pratt Ltr. at 3. He states that, despite Atalian objecting to some requests, it appears to have nevertheless produced responsive documents, and that Atalian has dumped irrelevant material on him. *Id.* As to the latter point, Pratt writes, "Atalian provided includes a random set of documents containing the word 'union,' including thousands of pages of communications with the union regarding staffing and seniority lists, which are not relevant to the claims in the case." *Id.* at 2. Atalian responds that it has, in fact, identified precisely which Bates ranges apply to which documents, *see, e.g.*, Atalian Resp., Ex. C;[2] that, where it objected yet still produced responsive material, it could be that such documents were responsive to another one of Pratt's overlapping requests; and that Pratt's charge regarding the "random" production of documents owes entirely to his extremely broad requests, *see* Atalian

---

[2] In a February 26, 2021 letter from Atalian's counsel to Pratt's, Atalian also stated, "[m]oreover, given that the parties have mutually agreed not to supply bates numbers for their productions, Atalian believes all of the alleged issues raised in Section I of your Letter are now resolved." Atalian Resp., Ex. D at 1. It is thus not fully clear the status of Bates numbering or whether Atalian's productions, in fact, accorded with an understanding of the parties that has not been disclosed to the Court.

Resp. at 3; *see id.*, Ex. A ¶ 25 (requesting "[a]ll communications between Seller or Atalian and the Union"); *id.*, Ex. B ¶ 15 requesting "[a]ll documents concerning Suburban and Atalian employees' Union priority dates from August 2013 through the present").

On this last point, the Court denies Pratt's request. Atalian appears to have produced many documents with corresponding responses precisely identifying the relevant Bates numbers. *See* Atalian Resp., Ex. C. And, as presented to the Court, Pratt's complaint about "unrequested" or "random" productions appears to stem instead from his own inartful document requests rather than any misfeasance on Atalian's part.

"Under Rule 34 of the Federal Rules of Civil Procedure, a party has two options for the production of documents in response to a discovery request. The litigant may either produce documents 'as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.'" *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409 (S.D.N.Y. 2009). "Rule 34 does not elaborate on the term 'usual course of business.' A party choosing to produce documents as maintained in the ordinary course of business 'bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate.'" *Id.* Atalian's productions must, of course, comply with this rule, whichever method of production it chooses. But on the record presented, the Court does not perceive noncompliance with Rule 34 warranting its intervention. *Cf. Roelcke*, 2020 WL 5752228, at *3 (noting that the discovery "process is supposed to occur with a minimum of judicial intervention"). To the extent that either side lacks an understanding of the basis or method by which discrete aspects of the documents furnished in discovery have been produced or organized, the Court strongly encourages the parties to work collaboratively and collegially to clarify those issues and productively complete fact discovery by their May 5, 2021 deadline. That deadline is firm.

SO ORDERED.

                                                                                    *Paul A. Engelmayer*
                                                                                    PAUL A. ENGELMAYER
                                                                                    United States District Judge

Dated: April 2, 2021
           New York, New York

12